IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SAMANTHA REHER,

Plaintiff,

v.

OPINION and ORDER

THE VILLAGE OF PALMYRA
and SCOTT PAVLOCK,

26-cv-320-amb

Defendants.

---

Plaintiff Samantha Reher is suing the Village of Palmyra and the Village's Police Chief, Scott Pavlock, alleging she was denied a full-time emergency medical technician position due to sex discrimination. She brings claims under Title VII and the Equal Protection Clause. Defendants have moved to dismiss the equal protection cause of action against both defendants, primarily on the grounds that it presents a legally inapplicable "class of one" claim or, alternatively, because it fails to adequately plead a *Monell* claim and because Chief Pavlock is entitled to qualified immunity.

For the reasons explained below, defendants' motion, Dkt. 6, is DENIED.

## ALLEGATIONS OF FACT[1]

In March 2023, plaintiff Samantha Reher was hired as a part-time emergency medical technician (EMT) for the Village of Palmyra Public Safety Department. Dkt. 1 at 3. In December of that year, the Palmyra Village Board approved the hiring of three full-time EMTs

---

[1] To resolve this motion, the court accepts as true all well-pleaded facts in the complaint, Dkt. 1, and drew all reasonable inferences in the plaintiff's favor. *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020).

and opened the position to internal applications. *Id.* When the positions were posted, applicants needed only medical technician licenses to apply—applicants did not need to be cross trained in firefighting. *Id.*

Plaintiff applied for the position and, in January 2024,[2] was notified that she had been selected to move forward in the hiring process, which included a background check. *Id.* at 4. At that time, plaintiff was notified that defendant Police Chief Scott Pavlock intended to interview selected applicants "to perform a secondary background check and 'honesty exam,'" at least in part because the Public Safety Department shared a space with the Police Department. *Id.* Plaintiff alleges that, despite the representation that Chief Pavlock would interview all applicants that had reached this stage, she was never interviewed, though the other two candidates were. *Id.* At some point in January 2024, Chief Pavlock requested that Fire and Emergency Medical Services Chief Hurley hire only people that were cross trained in firefighting, despite not being a requirement on the job announcement or application. *Id.*

Plaintiff and Chief Pavlock had their first relevant interaction on January 18, 2024. At that time, Chief Pavlock also served as the Public Safety Director of the entire Public Safety Department. Chief Pavlock entered a shared workroom while plaintiff was present. *Id.* He informed plaintiff that she would not be getting a full-time position, adding that he "heard from someone that she had interviewed poorly." *Id.* at 5. Shortly thereafter, Chief Pavlock volunteered that plaintiff reminded him of a former dispatcher, using the words "twin" and "doppelganger." *Id.* He then stated that the dispatcher "often acted like a 'Dumb Blonde

[2] The court believes there is a scrivener's error in the complaint, which reports that plaintiff was selected to move forward in the hiring process on "January 12, *2023*." Dkt. 1 at 4 (emphasis added). As the job was only posted in December 2023, the court understands plaintiff meant January 12, 2024.

Bimbo' type." *Id.* Chief Pavlock continued to recount a story about the dispatcher acting like an "airhead" at work, after which he left the room. *Id.*

Shortly afterwards, Chief Hurley entered and saw plaintiff "nearly in tears" and asked if she was okay. Plaintiff relayed what had just happened with Chief Pavlock. *Id.* at 5–6. Chief Hurley expressed confusion and surprise to hear what Chief Pavlock said, as Chief Hurley and Emergency Medical Services Captain Gonzalez thought plaintiff interviewed well and was "among the top choices." *Id.* at 6. Plaintiff told Chief Hurley that she did not want him to report Chief Pavlock to the Village Board out of fear of further "humiliation," and Chief Hurley told her that he would speak to Chief Pavlock about the incident in person. *Id.* Following Chief Hurley's discussion with Chief Pavlock, Chief Hurley relayed to plaintiff that Chief Pavlock changed his mind about the requirements and wanted to hire only people cross trained in firefighting. *Id.* at 7. Despite Chief Hurley's representation, plaintiff alleges that one of the full-time positions was filled by someone without firefighting training and Chief Pavlock allowed that person to start the job. *Id.*

On January 24, Chief Pavlock called a mandatory meeting at which he stated that "everyone was a bunch of gossip and rumor spreaders" and that no one was allowed to speak to the Village Board without his approval so that he could "manage what did and did not get shared with the Village Board." *Id.* Chief Pavlock also said that if anyone spoke to the Board without his approval, they would be subject to disciplinary action. *Id.*

On February 6, while working a night shift, Captain Gonzalez told plaintiff that people noticed a change in her behavior and inquired whether anything was the matter. *Id.* at 8. Plaintiff explained Chief Pavlock's interview comments, which Captain Gonzalez was

reportedly "shocked" to hear, reassuring plaintiff that she had had a good interview. *Id.* Captain Gonzalez suggested that plaintiff should report the incident.

Chief Hurley and Captain Gonzalez discussed the situation and agreed that they would report the incident according to the employee handbook. *Id.* at 9.

At some time later in February, Chief Hurley and Chief Pavlock met with plaintiff to discuss the full-time position, eventually making a formal offer via email from Chief Hurley. *Id.* Later that day, plaintiff completed a background check and drug test. *Id.* In the following days, Chief Hurley and plaintiff agreed that she would begin within the next few weeks. *Id.*

Meanwhile, on February 19, 2024, Captain Gonzalez met with Village Trustee Petruska to discuss the incident between Chief Pavlock and plaintiff. Trustee Petruska told Captain Gonzalez that she would report the incident to the police and fire Commissioner Chairperson Lubus for review. *Id.* The next day, Lubus emailed Captain Gonzalez saying she had forwarded the incident report to the Village Board President Weiss for review. *Id.*

That same evening, President Weiss invited Chief Pavlock to her home to discuss the incident and "other complaints" about him, without any other Village Board members present. *Id.* at 10. Chief Pavlock denied ever saying "bimbo," clarifying that he had actually said "Kimbo," which he said was a term of endearment.

The next morning, February 21, Chief Pavlock approached plaintiff and told her that her full-time position was "on hold," but did not provide an explanation. *Id.* Plaintiff reached out to Chief Hurley, who did not know anything about the position being on hold. *Id.* He told plaintiff to "stand by." *Id.* A few hours later, Chief Pavlock emailed the entire staff saying he had been reprimanded the night prior and would no longer use curse words in the department—a complaint plaintiff alleges stemmed from a different employee. *Id.*

At some point in early March, while plaintiff's full-time position was still on hold, Chief Pavlock sent an email to Chief Hurley informing him that the department would no longer be hiring plaintiff for a full-time position. *Id.* at 11–12. In its wake, Chief Hurley contacted President Weiss and informed her that plaintiff's job offer had been terminated, to which President Weiss responded that she had been told that plaintiff was no longer interested in the position, which plaintiff denies ever saying. *Id.* at 12.

On March 18, Chief Pavlock presented his new plan for the future of the Public Safety Department to the Village Board. *Id.* The new plan eliminated Chief Hurley's and Captain Gonzalez's supervisory positions. *Id.* Plaintiff feared the eliminations were retaliation for their attempts to help her file complaints against Chief Pavlock. *Id.*

During a shift on March 28, a full-time EMT informed plaintiff that Chief Pavlock had told her that plaintiff was "making up stories about him" because she was upset about not getting the full-time position. *Id.* at 13. Plaintiff reported that incident to the Village Board by email but received no answer. *Id.* Later that evening, plaintiff alleges Chief Pavlock "cornered" her in her office to talk. Amongst other things, Chief Pavlock asked plaintiff to discuss any concerns she had about the recent events with him, which made plaintiff "feel deeply uncomfortable," as if he was attempting to convince her to "drop any complaints she had made to the Village Board." *Id.* At one point, plaintiff called a fellow officer into the room to avoid spending more time alone with Chief Pavlock. *Id.* at 14.

On April 3, a new hire told plaintiff that Chief Pavlock told them that plaintiff had made false allegations against Chief Pavlock. *Id.* On April 5, another new hire told plaintiff that he had overheard Chief Pavlock discussing the "Bimbo/Kimbo" situation with "many of his peers." *Id.* Soon thereafter, plaintiff again emailed the Village Board asking what they

planned to do about the "harassing behavior," which again went unanswered. *Id.* A short time later, plaintiff's friend relayed that they had heard a Palmyra firefighter saying plaintiff made false accusations about the Public Safety Director. *Id.* This led plaintiff to file her letter of resignation from her position. *Id.*

Plaintiff filed this suit in April 2026 alleging two causes of action. Dkt. 1. The second is an equal protection claim alleging that Chief Pavlock discriminated against her based on her sex in deciding to not offer her the full-time position, and against the Village of Palmyra for failing to properly act on the complaints they received regarding Chief Pavlock's alleged behavior. *Id.* at 16.

Defendants have now moved to dismiss the second cause of action for failure to state a claim or, alternatively, to dismiss Chief Pavlock and the Village as defendants under different theories. Dkt. 6.

## LEGAL PRINCIPLES

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide fair notice of their claim, and the allegations in the complaint must plausibly plead a right to relief above the speculative level. *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020). Stated another way, the plaintiff must "present a story that holds together" and states a claim cognizable under the relevant law. *Taylor v. Salvation Army National Corporation*, 110 F.4th 1017, 1028 (7th Cir. 2024). In the context of a discrimination claim, "a plaintiff must only identify the type of discrimination [she] believes occurred, who is responsible, and when it happened." *Markgren v. Saputo Cheese USA Inc.*, No. 21-CV-429-JDP, 2022 WL 3701707, at *2 (W.D. Wis. Aug. 26, 2022) (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010)).

ANALYSIS

Defendants have moved to dismiss plaintiff's equal protection cause of action under Rule 12(b)(6) and, because it is the only claim leveled against him, Scott Pavlock as a defendant. Dkt. 7 at 1. Alternatively, defendants argue the equal protection claim should be dismissed against the Village because plaintiff failed to properly plead it as a *Monell* claim. *Id.* at 5. And, also alternative to their first theory, the equal protection claim should be dismissed against Chief Pavlock because he is entitled to qualified immunity. *Id.* at 9. The court rejects defendants' arguments in turn and denies the motion.

**A. "Class of one"**

Defendants first contend that plaintiff's second cause of action fails to state a claim because it constitutes a "class of one" equal protection claim, which public employees are barred from bringing under *Engquist v. Oregon Dept. of Agriculture,* 553 U.S. 591 (2008). *Id.* at 4. Unlike a traditional equal protection claim that protects members of recognized, vulnerable groups like race and sex, a class-of-one equal protection claim asserts that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (citation omitted). In *Engquist*, the Supreme Court explained that, while public employees may bring traditional equal protection claims "when the government makes class-based decisions in the employment context," class-of-one claims "[have] no application in the public employment context." *Enquist*, 553 U.S. at 605, 608.

As true as defendants' interpretation of *Engquist* may be, it is unapplicable in this case because plaintiff did not plead her equal protection claim under a class-of-one theory. Rather, plaintiff asserts she "was discriminated against and harassed because of her female sex." Dkt. 1

at 1. Regarding her equal protection claim specifically, plaintiff alleges that Chief Pavlock "discriminated against [her] on the basis of sex in deciding not to offer her the full-time EMS position," and that the Village and its president "fail[ed] to properly act on the complaints they received" about Chief Pavlock's mistreatment of her that "occurred in substantial part because of Ms. Reher's sex." *Id.* at 16.

In a pivot, defendants argue in reply that plaintiff "did not mention any other factual allegations to support" a sex discrimination claim. Dkt. 13 at 1. But "the standard for stating employment discrimination or retaliation claims is permissive" at the pleading stage. *Markgren*, 2022 WL 3701707, at *2. "[A] plaintiff must only identify the type of discrimination [she] believes occurred, who is responsible, and when it happened." *Id.* (citing *Swanson v. Citibank, N.A.*, 614 F.3d at 405 (7th Cir. 2010)); *see also Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021) (stating the same).

Plaintiff cleared this hurdle in her complaint. She claims that Chief Pavlock discriminated against her based on her female sex in denying her a full-time EMT position in January and February 2024. And she supported this claim with detailed allegations—e.g., Chief Pavlock's alleged statement likening her to a "dumb blonde bimbo"—from which the court can draw plausible inferences. This is sufficient to survive a Rule 12(b)(6) motion to dismiss.

**B. *Monell* claim**

In the alternative, defendants argue that plaintiff's equal protection claim against the Village should be dismissed because she failed to adequately allege a *Monell* claim. In *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, (1978), the Supreme Court held that a local governmental entity may be found liable under § 1983 when it violates constitutional rights via an official policy or custom. To establish an official policy or custom, a plaintiff must show that her

constitutional injury was caused by (1) the enforcement of an express policy of the entity, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with "final policymaking authority." *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011). Applying the applicable state or local law, *id.*, village boards and village presidents have been found to have such final policymaking authority under certain circumstances. *See id.*; *see also Wragg v. Vill. of Thornton*, 604 F.3d 464, 468–69 (7th Cir. 2010) (determining whether a village board or president had final policymaking authority); *see also Rasche v. Village of Beecher*, 336 F.3d 588, 601 (7th Cir. 2003) ("Generally . . . the policymaking authority in the city structure will be the city council, or here, the Board of Trustees.").

Defendants argue that plaintiff's equal protection claim against the Village Board and its president is a *Monell* claim and that plaintiff failed to plead it adequately by failing to expressly name the persons with final policymaking authority or identify the policy that was chosen and caused her injury. Dkt. 7 at 8. Plaintiff confirms that she is pursuing a claim under *Monell*'s third permissible basis—a person with final policymaking authority—and argues that the Board's and president's decisions to not properly act on the complaints they received about Chief Pavlock's mistreatment of her caused the constitutional injury. Dkt. 12 at 19–20.

At this juncture, this is sufficient to survive a motion to dismiss. *Monell* claims are not subject to heightened pleading standards. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). "[P]laintiffs need not 'allege all, or any of the facts logically entailed by the claim[, a] plaintiff does not have to plead evidence[, and a] complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing.'"

*Serna v. Sears*, No. 13-CV-03359, 2015 WL 3464460, at *3 (N.D. Ill. May 29, 2015) (quoting *Payton v. Rush Presbyterian–St. Luke's Med. Ctr.,* 184 F.3d 623, 626–27 (7th Cir. 1999)).

Plaintiff named the Village Board of Palmyra as a defendant and alleges that its repeated failure to properly act on her complaints lodged against co-defendant Pavlock enabled the circumstances that resulted in her resigning without securing a full-time position. Dkt. 1 at 16. And, as detailed above, she offers sufficient narrative detail to make those claims plausible on their face. As has been the case in other courts in this circuit, that is sufficient to survive a motion to dismiss. *See Heckman v. Vill. of Shannon*, No. 25-CV-50404, 2026 WL 353590, at *7 (N.D. Ill. Feb. 9, 2026) (denying a motion to dismiss a *Monell* claim when "[t]he allegations show[ed] a series of bad acts by village trustees and the village president," allowing the court to "infer [. . .] that the policy-making level of government was bound to have noticed what was going on but failed to do anything"); *see also Bohannon v. City of Milwaukee*, 998 F. Supp. 2d 736, 746 (E.D. Wis. 2014) (denying a motion for judgment on the pleadings asking to dismiss a *Monell* claim where plaintiff made "[g]eneral allegations that the City and [police department] received [and] . . . ignored or rejected complaints" permitting "aggressive searches to continue and escalate").

Defendants may ask plaintiff to clarify and substantiate her claims in discovery and challenge their factual and legal sufficiency at the summary judgment phase. For now, plaintiff may proceed on her *Monell* claim.

**C. Qualified immunity**

Finally, defendants argue that plaintiff's equal protection claim against Chief Pavlock should be dismissed because he is entitled to qualified immunity. Dkt. 7 at 9. This argument is premature. "[B]ecause immunity may depend on particular facts that a plaintiff need not

plead to state a claim, . . . dismissal under Rule 12(b)(6) is appropriate based on qualified immunity only when the plaintiffs' well-pleaded allegations, taken as true, do not state a claim of violation of clearly established law." *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (internal quotations omitted). This is not the case here. Sex discrimination in public employment was clearly a violation of established law in 2023, when these events were alleged to have taken place. But more to the point, defendants do not argue to the contrary. Rather, defendants advance a fact-intensive argument aiming to persuade the court that *here*, Chief Pavlock was not aware that he was violating the law. Dkt. 7 at 8–9. Such an argument depends on facts not yet adduced and is inappropriate at this point. The court rejects defendants' argument on this point.

ORDER

IT IS ORDERED that defendants' motion to dismiss plaintiff's second cause of action, Dkt. 6, is DENIED.

Entered September 4, 2026.

BY THE COURT:

/s/

ANITA MARIE BOOR
Magistrate Judge